**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**Civil Case No.**

| | |
|---|---|
| OSP SOLUTIONS, LLC, and CVO ENTERPRISES, INC., | |
| Plaintiffs, | **JURY TRIAL DEMAND** |
| V. | |
| ZACHARY M. SHIFLETT and SHIFLETT ENTERPRISE SOLUTIONS, INC., | |
| Defendants. | |

## COMPLAINT

For their Complaint against Zachary M. Shiflett ("Shiflett") and Shiflett Enterprise Solutions, Inc. ("Shiflett Enterprise," and together with Shiflett, "Defendants"), Plaintiffs OSP Solutions, LLC ("OSP"), and CVO Enterprises, Inc. ("CVO") (collectively, "Plaintiffs") through their attorneys, allege that:

## NATURE OF THE ACTION

Shiflett, a former salesperson and so-called Director of Sales for OSP, and Shiflett's newly formed company, Shiflett Enterprise, now a direct competitor of Plaintiffs, have conspired to take Plaintiffs' trade secrets in violation of state and federal laws and the duty he owed to Plaintiffs while their employee. Before his termination from OSP, Shiflett secretly formed Shiflett Enterprise to compete with OSP.

While employed, Shiflett began using his personal devices to access and download proprietary information from OSP's servers, including without limitation, pricing information, confidential agreements with manufacturers, proprietary patent/design information, shipping information, and contact information for customers and manufacturers that he otherwise would not be able to access. Shiflett continued to work for Plaintiffs after starting Shiflett Enterprise so that he could build his capital, steal Plaintiffs' business relationships, and loot their trade secrets.

In early June 2024, Plaintiffs became aware of Shiflett's scheme when one of their manufacturers asked about Shiflett Enterprise and some of Plaintiffs' customers and manufacturers uncharacteristically stopped doing business with Plaintiffs. After conducting an internal investigation, Plaintiffs discovered that Shiflett had been planning to compete against Plaintiffs and taking sensitive information from them for *nearly one year*.

This action seeks to enjoin Defendants' use of Plaintiffs' trade secrets and confidential information, and require Defendants to account for and return all such information to Plaintiffs. In addition, Plaintiffs seek to recover from Defendants the damages they have incurred as a result of Defendants' wrongdoing, including punitive damages.

## PARTIES, VENUE, AND JURISDICTION

1.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331, 1332, and 18 U.S.C. § 1836. This is a civil action arising under the

laws of the United States (theft of trade secrets, in particular), and arises between citizens of different states. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

2.      Blue Ridge Infrastructures Partners Midco, LLC ("Blue Ridge Infrastructures") is a Delaware limited liability company with its principal office at 108 Lakeland Ave, Dover, Delaware, 19901.

3.      OSP Solutions, LLC ("OSP") is a Delaware limited liability company with its principal office at 108 Lakeland Ave, Dover, Delaware, 19901, and is the fiber optics distribution subsidiary of Blue Ridge Infrastructures.

4.      OSP has obtained a Certificate of Authority to transact business in the State of North Carolina, and its registered office is located at 176 Mine Lake CT 100, Raleigh, North Carolina 27615.

5.      CVO Enterprises, Inc. ("CVO") is a Delaware limited liability company with its principal office at 108 Lakeland Ave, Dover, Delaware, 19901 and is the fiber optics construction subsidiary of Blue Ridge Infrastructures.

6.      CVO has obtained a Certificate of Authority to transact business in the State of North Carolina, and its registered office is located at 176 Mine Lake CT 100, Raleigh, North Carolina 27615.

7.      Plaintiffs transact business from the same office located at 14 Old Charlotte Highway, Asheville, North Carolina 28803.

8.      Defendant Zachary M. Shiflett is a citizen of Tennessee for purposes of diversity jurisdiction. His primary residence is in Tennessee.

Capua Law Firm, PA
3

9.     Shiflett Enterprise Solutions, Inc. is a Tennessee corporation with its principal place of business at 100 Becca Circle, Johnson City, Tennessee 37601. Shiflett is the sole shareholder of Shiflett Enterprise.

10.     Venue is proper in the Western District of North Carolina pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims alleged below occurred in this District.

11.     This Court has personal jurisdiction over Defendants because Defendants have purposely availed themselves of the laws of North Carolina by conducting business directly and indirectly in North Carolina during all times relevant to this Complaint.

## FACTUAL ALLEGATIONS

### A. OSP/CVO's Business and Shiflett's Employment.

12.     Plaintiffs are both fiber optic companies and subsidiaries of Blue Ridge Infrastructure.  Though formed and incorporated in Delaware, CVO and OSP are North Carolina limited liability companies that transact business in Asheville, North Carolina, among other locations.

13.     While CVO is responsible for fiber optics construction projects and employee payroll, OSP is responsible for purchasing and distributing materials for fiber optics construction projects.

14.     On January 16, 2023, Shiflett was employed by STL OSP, LLC ("STL"), another subsidiary of Blue Ridge Infrastructure, in a sales position.

Capua Law Firm, PA
4

15. However, on March 28, 2023, Defendant Shiflett was transferred to a salaried position at CVO, where he had no sales responsibilities. Shiflett was an employee of CVO and received a W-2 for tax purposes.

16. Though Shiflett worked remotely at times, Shiflett was principally based out of CVO's Asheville office located at 14 Old Charlotte Highway.

17. In the summer of 2023, Shiflett, while still on CVO's payroll, began to cultivate relationships with OSP's international suppliers, manufacturers, and distributors of products used in the fiber optics business.

**B. Shiflett's Access to Trade Secrets.**

18. At all times relevant to the incidents giving rise to this Complaint, Plaintiffs had arrangements with national and international suppliers, manufacturers, and distributors, whereby OSP received favorable pricing for fiber optics products, and OSP then distributed those products to smaller suppliers within the fiber optics industry.

19. Information regarding Plaintiffs' pricing agreements and arrangements with distributors was accessible to Shiflett, but not publicly available. These pricing agreements and arrangements gave Plaintiffs a competitive advantage in the fiber optics industry.

20. Plaintiffs took appropriate measures to keep these pricing agreements and arrangements with distributors confidential. Plaintiffs labeled all trade secret information as "confidential," and stored such information in a password protected database called "Quickbase."

Capua Law Firm, PA

5

21. Quickbase could only be accessed by a select group of Plaintiffs' employees and owners, including the controller, purchasing manager, sales team, and warehouse manager.

22. Quickbase was only accessible using the proper, individualized credentials-login, username, and password. In addition, OSP utilized firewires and other risk monitoring applications to maintain the confidentiality of their trade secrets.

23. By virtue of his employment, Shiflett had login credentials to Quickbase and could access information and data that concerned all aspects of Plaintiffs' relationship with suppliers, manufacturers, and distributors. Such information and data were confidential and necessary to the development and sale of fiber optic products, including without limitation, competitive and confidential pricing, confidential shipping information, pending patents for technology under development, and drawings and plans for product development.

24. At times, Plaintiffs provided Shiflett with resources to help him develop relationships with national and international suppliers, manufacturers, and distributors solely for the benefit of Plaintiffs. These resources included, but were not limited to, company-owned property such as a cell phone and laptop computer for use in his company-related duties. At all times during Shiflett's employment, those electronic devices remained Plaintiffs' property.

25. In the fall of 2023, Shiflett covertly formed plans to leave Plaintiffs to start his own company within the fiber optics industry—a business that would directly compete with them.

26. In November 2023, Shiflett conducted an internet search on his company computer to learn how to start a limited liability corporation.

27. Upon information and belief, from that point forward, Shiflett rarely used his company cell phone and laptop to conduct business on Plaintiffs' behalf. Instead, he began using his personal cell phone and personal computer with the intention to conceal his theft of proprietary information from Plaintiffs.

28. As merely one example of such acts, Shiflett used a smartphone application on his personal cell phone called "WhatsApp" to communicate with suppliers, manufacturers and distributors that were doing business with CVO or OSP, rather than use his company cell phone or company email to do so.

29. To the extent Shiflett used the electronic devices provided to him by Plaintiffs, he conducted searches using the private search web browser, DuckDuckGo.

30. Upon information and belief, DuckDuckGo is a private search engine that does not save any search activity, web sites visited or allow for the use of any "cookies."

31. Upon information and belief, Shiflett used DuckDuckGo to conceal from Plaintiffs this theft and use of their trade secrets.

32.     On May 20, 2024, and without notifying Plaintiffs, Shiflett started his own company, Shiflett Enterprise, while still fully employed by CVO, to compete directly with Plaintiffs in the fiber optics industry.

33.     In June 2024, one or more manufacturers and/or distributors informed Plaintiffs that Shiflett had approached them to see if they would bring their business to Shiflett Enterprise rather than Plaintiffs.

34.     Upon further investigation, Plaintiffs learned that Shiflett, while still Plaintiffs' employee, attempted to convince other employees to resign from CVO or OSP to come work for Shiflett Enterprise.

35.     When Plaintiffs investigated such claims, some of OSP's suppliers told Plaintiffs that they had been asked to invest in Shiflett Enterprise.

36.     All the aforementioned conduct occurred while Shiflett was still an employee of CVO, and after he had started Shiflett Enterprise.

37.     On or about June 20, 2024, J. Brooke Lunsford ("Mr. Lundsford"), an owner in Blue Ridge Infrastructure, confronted Shiflett about what he had learned from his employees and business partners.

38.     Shiflett denied that he had tried to steal employees of CVO or OSP, that he had solicited investments from Plaintiffs' clients, and that he was trying to steal Plaintiffs' suppliers and distributors.

39.     However, when confronted with details of what Mr. Lunsford had learned about Shiflett Enterprise, Shiflett admitted that he had started his own company.

40. Between the approximate dates of May 20, 2024, and June 26, 2024, Shiflett continued to work for Plaintiffs, and maintained access to their confidential trade secrets (including but not limited to, pricing information, proprietary designs, shipping arrangements, and client contact information) all while interfering with Plaintiffs' relationships with clients, manufacturers, distributors and employees. Shiflett used his access to Plaintiffs' trade secrets and his relationships with their business partners for the benefit of Shiflett Enterprise, all to the detriment of his employer.

41. On June 26, 2024, Plaintiffs formally terminated Shiflett.

42. After Shiflett's termination, some manufacturers and distributors that had contractual relationships with Plaintiffs stopped doing business with them, including but not limited to, a Chinese manufacturer, U1Conec, with whom OSP had enjoyed a long-standing and lucrative relationship.

**C. Shiflett Misappropriated OSP's Trade Secrets to His Advantage.**

*Sterlite Technologies Limited*

43. Plaintiffs had a confidential price agreement with an Indian supply company, Sterlite Technologies Limited ("Sterlite") whereby Plaintiffs received favorable pricing for fiber optics products, and Plaintiffs then distributed those products to smaller suppliers within the fiber optics industry.

44. The favorable pricing relationship with Sterlite enabled Plaintiffs to compete with larger and more established distributors within the fiber optics industry.

45. Shiflett had access to the confidential price agreements reached with Sterlite, which he downloaded from QuickBase using his individualized company issued login, username, and password.

46. Shiflett used the confidential price agreements between Plaintiffs and Sterlite to his competitive advantage, and to Plaintiffs' detriment.

*Vortex*

47. In the months leading up to the formal creation of Shiflett Enterprise, Shiflett developed a relationship with a Chinese company called Vortex.

48. In early May 2024, without consulting or receiving approval from Plaintiffs, Shiflett informed Victory Electric, a distributor that OSP routinely ordered from, that OSP's future orders would be routed through Vortex.

49. On May 13, 2024, seven days before the formal creation of Shiflett Enterprise, Shiflett placed an order of $70,000 with Vortex. Vortex then placed the same order with Victory on Plaintiffs' behalf.

50. On June 3, 2024, two weeks after the formal creation of Shiflett Enterprise, Shiflett placed another order with Vortex. Once again, Vortex then placed that same order with Victory on Plaintiffs' behalf.

51. Upon information and belief, Shiflett routed Plaintiffs' orders through Vortex in return for personal financial gain.

*U1Conec*

52. During his employment with Plaintiffs, Shiflett had limited involvement in creating a patent-pending waterproof fiber dome device developed by Mr. Lunsford

("Device"), for which Shiflett was given some creative credit. The applicant for the patent was OSP, the entity that would own the patent upon approval. Upon patent approval, Plaintiffs intended to use their existing manufacturer, U1 Telecommunications Co., LTD ("U1Conec"), to build the Device for distribution.

53. During the time spent engaging U1Conec to build the Device, numerous emails were exchanged between U1Conec and Shiflett containing specifications, drawings and other sensitive confidential information pertaining to the development of the Device.

54. When Plaintiffs reviewed Shiflett's emails on their company server, they discovered that all emails pertaining to the Device—and containing highly sensitive information—had been deleted or were otherwise missing from Shiflett's email.

55. Shortly after discovering the missing emails, Plaintiffs learned that the proposed manufacturer of the Device, U1Conec, offered to invest one million dollars ($1,000,000) in Shiflett Enterprise, and pay Shiflett a salary of one hundred thousand dollars ($100,000.00), and Shiflett's wife, Hannah Troutman, a salary of sixty thousand dollars ($60,000).

56. Upon information and belief, Shiflett used Plaintiffs' proprietary information for personal and financial gain with manufacturer U1Conec.

57. Upon information and belief, Shiflett stole Plaintiffs' trade secrets and concealed his theft for personal and financial gain during his employment.

## D. **Forensic Examination of Shiflett's Work Devices.**

58. Following Shiflett's termination, Plaintiffs employed Carolina Digital Forensics, LLC ("Carolina Digital"), an unaffiliated digital forensic examiner, to examine Shiflett's company devices.

59. As a result of their forensic examination, Carolina Digital determined as follows:

- On numerous occasions during his employment by Plaintiffs, Shiflett accessed confidential trade secrets including company product specifications, customer quotes, purchase orders, invoices, company inventory databases, and price lists.

- On numerous occasions during his employment with Plaintiffs, Shiflett accessed QuickBase, Plaintiffs' internal, password protected client and company document management software, at quickbase.com.

- On numerous occasions during his employment with Plaintiffs, Shiflett accessed Plaintiffs' OneDrive, which required employee log-in credentials, and which server contained Plaintiffs' proprietary information. On the OneDrive, Shiflett accessed numerous company folders, including repeated visits to a company folder labeled "Contracts and Agreements."

- On September 26, 2023, when Shiflett was planning to compete against Plaintiffs, Shiflett downloaded a file named "036-18

Capua Law Firm, PA

12

Appendix A Bid Workbook.xlsx" which contained confidential bid information.

- On September 28, 2023, Shiflett downloaded a file named "97-2023 Pricing - Addendum 1.xlsx" which contained confidential pricing information.

- On January 11, 2024, Shiflett downloaded a file named "30x48x36 Vault Specsheet.pdf" which contained proprietary product information.

- On May 7, 2024, Shiflett downloaded files named "Jinmeng Invoice DIST1415.pdf" and "Jinmeng PO DIST1415D.pdf" which contained purchase order information with supplier Hangzhou Jinmeng Road Establishment Co., Ltd. ("Jinmeng"), and confidential supplier contact information, supplier banking information, and confidential product pricing information.

- On May 7, 2024, Shiflett downloaded a file named "BEAM QUOTE DIST2441.pdf" which contained confidential customer contact information and customer order information.

- On May 20, 2024, and numerous other dates, Shiflett downloaded files named "Reels (1).csv," "Reels (2).csv," "Reels (3).csv," "Reels (4).csv," "Reels (5).csv," "Reels (6).csv," and "Reels (7).csv," which files contain Plaintiffs' confidential price lists with various businesses, including vendors, suppliers, or clients.

Capua Law Firm, PA
13

- On May 24, 2024, Shiflett logged into a Google account for "shiflettsolutions@gmail.com," which account appears to be the email address and Google account for Shiflett Enterprise. Shiflett logged into this Google account on multiple occasions, and remained logged into this account, through the date of his termination.

- On June 20, 2024, after being confronted by Lunsford about Shiflett Enterprise, Shiflett deleted approximately 86 documents that he had previously downloaded and stored on his work device, including but not limited to Plaintiffs' confidential price lists, invoices, purchase orders, and proprietary product information (the "June 20 Deleted Documents").

60. Upon information and belief, Shiflett deleted the records of the June 20 Deleted Documents with the intention to conceal his theft of proprietary documents.

61. Upon information and belief, Shiflett transferred the June 20 Deleted Documents to his personal devices and did so with the intent to use the information for his and Shiflett Enterprise's financial gain.

62. Upon information and belief, Shiflett used Shiflett Enterprise's email to copy proprietary trade secrets onto his Google drive or otherwise store and conceal Plaintiffs' confidential information on personal devices before his formal termination.

63. Following his termination, Plaintiffs requested Shiflett's consent to a forensic search of his personal devices, but as of the date of this filing, Shiflett has not given his consent.

Capua Law Firm, PA
14

## Count I
## Injunctive Relief
## (Against All Defendants)

64.     The allegations in the foregoing paragraphs of this Complaint are fully re-alleged and incorporated by reference herein.

65.     While in their employ, Shiflett surreptitiously accumulated Plaintiffs' trade secrets for the purpose of starting his own company, Shiflett Enterprise.

66.     Consequently, Defendants obtained confidential, proprietary, and sensitive information from Plaintiffs through illegal acts of fraud, theft, and other conduct described above, for the purpose of harming Plaintiffs and unfairly competing with Plaintiffs in the fiber optics industry.

67.     Plaintiffs have no plain, adequate, or speedy remedy at law, and will suffer significant, permanent, and irreparable harm if preliminary and permanent injunctions are not entered enjoining Defendants from (1) using Plaintiffs' trade secrets and confidential information; (2) further disclosing Plaintiffs' trade secrets and confidential information; and (3) further using the Plaintiffs' confidential information for purposes of stealing Plaintiffs' manufacturers and distributors.

## COUNT II
## Federal Trade Secret Violation, 18 U.S.C. § 1836
## (Against All Defendants)

68.     The allegations in the foregoing paragraphs of this Complaint are fully re-alleged and incorporated by reference herein.

69.     Shiflett had access to Plaintiffs' internal and confidential records, including but not limited to price agreements with international suppliers such as

Capua Law Firm, PA
15

Sterlite, manufacturers such as U1Conec, and distributors that were integral parts of Plaintiffs' ability to conduct interstate and foreign commerce.

70. At all times, Plaintiffs maintained and took reasonable measures to protect the trade secrets necessary to the development and sale of fiber optic products, including without limitation, competitive and confidential pricing, confidential shipping information, pending patents for technology under development, and drawings and plans for product development.

71. Plaintiffs clearly labeled these trade agreements and other trade secrets as confidential and stored those trade secrets in Quickbase, a password protected database. Plaintiffs additionally protected their trade secrets through use of company-owned computers and phones, firewalls, and IT risk monitoring.

72. By virtue of his employment, Shiflett had access to Plaintiffs' database through his company owned computer and was able to download and otherwise share trade secrets without the consent or knowledge of Plaintiffs.

73. Plaintiffs' trade secrets were not known or readily ascertainable by the public or other competitors, and Shiflett stole them with the intent to convert those trade secrets to the economic benefit of himself and Shiflett Enterprise.

74. Shiflett knew that Plaintiffs' trade secrets were intended for use in interstate and foreign commerce, and by using Plaintiffs' trade secrets to steal Plaintiffs' business partners and employees, his actions could injure Plaintiffs, and did injure Plaintiffs, giving Shiflett Enterprise an unfair, competitive advantage, and assisting Shiflett Enterprise in developing new business relationships for its benefit.

75.     Shiflett knew that Plaintiffs' trade secrets were intended for use in interstate and foreign commerce and obtained such trade secrets for the purpose of competing with and thereby injuring Plaintiffs.

76.     Shiflett, without authorization, by fraud, artifice, or deception, stole or attempted to steal trade secrets from Plaintiffs.

77.     Upon information and belief, Shiflett Enterprise used, and is using, Plaintiffs' trade secrets to compete with Plaintiffs in the fiber optics industry.

78.     Possession of Plaintiffs' trade secrets provides Defendants an economic advantage over Plaintiffs, who have expended substantial resources to develop and secretly maintain this information.

79.     As a proximate result of Defendants' willful and malicious misappropriation, Plaintiffs have suffered damages, including but not limited to, lost profits, loss of clients, loss of goodwill, loss of confidentiality of trade secrets, and loss of competitive position, for which Plaintiffs should be justly compensated.

80.     Pursuant to 18 U.S.C. § 1836, Plaintiffs are entitled to an injunction against Defendants, damages for actual loss, unjust enrichment and, due to the willful and malicious nature of Defendants' actions, exemplary damages and attorneys' fees.

### COUNT III
### Misappropriation of Trade Secrets Under North Carolina's Trade Secret Protection Act (N.C. Gen. Stat. §66-152 *et seq.*) (Against All Defendants)

81.     The allegations in the foregoing paragraphs of this Complaint are fully realleged and incorporated by reference herein.

Capua Law Firm, PA

17

82.     Plaintiffs maintained and took reasonable measures to protect the trade secrets necessary to the development and sale of fiber optic products, including without limitation, competitive and confidential pricing, confidential shipping information, pending patents for technology under development, and drawings and plans for product development

83.     Plaintiffs clearly labeled these trade agreements and other trade secrets as confidential and stored trade secrets in a password protected database, Quickbase. Plaintiffs additionally protected their trade secrets through use of company owned computers and cell phones, firewalls, and IT risk monitoring.

84.     Shiflett knew or should have known that these trade secrets were confidential and secret due to the measures Plaintiffs took to ensure that they were not made publicly available.

85.     By virtue of his position, Shiflett had access to Plaintiffs' database through his company-owned computer and was able to download and otherwise share trade secrets without the consent or knowledge of Plaintiffs.

86.     Shiflett obtained and used Plaintiffs' confidential information to start Shiflett Enterprise for the purpose of directly competing with Plaintiffs in the fiber optics industry.

87.     Upon information and belief, Shiflett Enterprise used, and is using, Plaintiffs' trade secrets to compete with Plaintiffs in the fiber optics industry.

88.     Such information included, by way of example only, the confidential information regarding all aspects of OSP's relationship with manufacturers that

supplied OSP with products, including pricing, shipping information, and other sensitive information related to the relationships between OSP and their manufacturers.

89.     Shiflett performed such acts outside the course and scope of his work responsibilities for Plaintiffs and for his exclusive benefit and financial gain.

90.     Such acts constitute violations of North Carolina's Trade Secret Protection Act.

91.     Plaintiffs developed and maintained their trade secret information at substantial effort and expense and have taken reasonable measures to protect such trade secrets.

92.     Plaintiffs' trade secrets derive economic value by not being known or readily ascertainable by Plaintiffs' competitors, such as Shifflett Enterprise, which can now profit from their use.

93.     As a proximate result of Defendants' willful and malicious misappropriation, Plaintiffs have suffered damages, including but not limited to, lost profits, loss of clients, loss of goodwill, loss of confidentiality of trade secrets, and loss of competitive position for which Plaintiffs should be compensated.

94.     Pursuant to N.C. Gen. Stat. § 66-152, Plaintiffs are entitled to compensatory and punitive damages, and attorneys' fees for Defendants' misappropriation.

95.     Plaintiffs have no plain, adequate, or speedy remedy at law, and will suffer significant, permanent, and irreparable harm if preliminary and permanent

injunctions are not entered enjoining Defendants from (1) using Plaintiffs' trade secrets and confidential information; (2) further disclosing Plaintiffs' trade secrets and confidential information; and (3) further using the Plaintiffs' confidential information for purposes of stealing Plaintiffs' manufacturers and distributers.

## COUNT IV
### Violations of North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1 *et seq.*)
### (Against All Defendants)

96. The allegations in the foregoing paragraphs of this Complaint are fully realleged and incorporated by reference herein.

97. During his employment with Plaintiffs, Shiflett acted in concert with and as an agent for Shiflett Enterprise, which he deceptively formed while employed by Plaintiffs.

98. During the time of his employment by Plaintiffs, Shiflett used concealment and deception to appropriate confidential information which he in turn used to gain an unfair advantage as a direct competitor to Plaintiffs.

99. Shiflett performed such acts outside the course and scope of his work responsibilities for Plaintiffs and for his exclusive benefit and financial gain.

100. Upon information and belief, Shiflett Enterprise used, and is using, Plaintiffs' trade secrets to compete with Plaintiffs in the fiber optics industry.

101. Defendants' wrongful acts, including but not limited to, misappropriation of trade secrets and confidential information, fraudulent misrepresentations and/or omissions, using misappropriated information to steal business partners and/or clients, and other deceptive, unethical, and unscrupulous

Capua Law Firm, PA

20

conduct constitutes unfair and deceptive trade practices in violation of N.C. G.S. § 75-1.1.

102.  Defendants' unfair trade practices were in or affecting commerce within the meaning of N.C. G.S. § 75-1.1.

103.  Defendants' conduct as set forth herein is unethical, immoral, unscrupulous, and deceptive.

104.  As a proximate result of Defendants' unfair and deceptive conduct, Plaintiffs are entitled to all relief provided under N.C. G.S. § 75-1.1 *et seq.*, including treble damages and attorneys' fees.

## **Prayer for Relief**

WHEREFORE, Plaintiffs respectfully pray as follows:

1.  Enter the injunctive relief prayed for herein;

2.  Enter judgment in favor of Plaintiffs and against Defendants, jointly and severally liable, for damages in an amount to be proven at trial but in excess of $75,000, including punitive damages;

3.  Award Plaintiffs all costs and reasonable attorney's fees as allowed by law;

4.  A trial by jury be had on all triable issues; and

5.  Award all other and further relief the Court deems just and proper.

This, the 12th day of September, 2024.

Capua Law Firm, PA
21

/s/ *Natalia L. Talbot*
Paul A. Capua/ N.C. State Bar No. 40239
Natalia Talbot/N.C. State Bar No. 55328
Glenn M. Conway/ N.C. State Bar No. 60514
*Attorneys for Plaintiff*
CAPUA LAW FIRM, PA
58 ½ N. Lexington Ave.
Asheville, NC 28801
Telephone: (828) 264-0260
Fax: (828) 378-0236
E-mail: natalia@capualaw.com
E-mail: paul@capualaw.com