IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:24-cv-00238-MR-WCM

| | |
|---|---|
| OSP SOLUTIONS, LLC, and ) <br> CVO ENTERPRISES, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> ZACHARY M. SHIFLETT, and ) <br> SHIFLETT ENTERPRISE ) <br> SOLUTIONS, INC., ) <br> ) <br> Defendants. ) <br> _____ ) | AMENDED <br> MEMORANDUM AND <br> RECOMMENDATION |

This matter is before the Court on Plaintiffs' Motion to Dismiss Defendant Shiflett's Counterclaims (the "Motion to Dismiss," Doc. 11), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.[1]

---

[1] On July 21, 2025, the undersigned issued a Memorandum and Recommendation. Doc. 16. No party has objected to that recommendation, which remains pending for disposition by the presiding District Judge. Nonetheless, the Court has since identified authority that, in the interest of justice, counsels toward allowing Defendant's counterclaim for wrongful termination in violation of public policy to proceed. This Amended Memorandum and Recommendation is being filed *sua sponte* for the limited purpose of amending the undersigned's recommendation as to that claim.

1

I. Procedural History

On September 12, 2024, OSP Solutions, LLC, and CVO Enterprises, Inc. ("CVO") (collectively "Plaintiffs") filed their Complaint against Zachary M. Shiflett ("Shiflett") and Shiflett Enterprise Solutions, Inc. ("Shiflett Enterprise Solutions") (collectively "Defendants"). Doc. 1.

On November 7, 2024, Defendants filed an Answer and Shiflett asserted counterclaims. Doc. 9.

On December 19, 2024, Plaintiffs filed the Motion to Dismiss. Docs. 11, 12. Shiflett has responded, and Plaintiffs have replied. Docs. 14, 15.

II. The Allegations in the Parties' Pleadings

A. Plaintiffs' Complaint

Plaintiffs allege that they are fiber optic companies and subsidiaries of Blue Ridge Infrastructures Partners Midco, LLC ("Blue Ridge Infrastructures"). Doc. 1 at ¶¶ 2, 12–13.

Shiflett was originally hired for a sales position with another (non-party) subsidiary of Blue Ridge Infrastructure but, on March 28, 2023, "was transferred to a salaried position at CVO, where he had no sales responsibilities." Id. at ¶¶ 14–15.

In the summer of 2023, Shiflett "began to cultivate relationships with OSP's international suppliers, manufacturers, and distributors of products used in the fiber optics business." Id. at ¶ 18.

Subsequently, and while still employed by CVO, Shiflett began his own company—Shiflett Enterprise Solutions—to compete with Plaintiffs in the fiber optics industry, approached Plaintiffs' customers about transferring their business to Shiflett Enterprise Solutions, and misappropriated Plaintiffs' proprietary information and trade secrets. Id. at ¶¶ 32, 33, 43-63.

Plaintiffs terminated Shiflett's employment on June 26, 2024. Id. at ¶ 41.

### B. Shiflett's Counterclaim

Shiflett alleges that Plaintiffs employed him as director of sales from March 28, 2023 until June 26, 2024. Doc. 9 at ¶¶ 1, 2.[2]

Shiflett alleges that he accepted the position based on Plaintiffs' "assurance that he would be paid a salary, commissions, and a share of profits." Id. at ¶ 1.

Although Plaintiffs paid Shiflett "$73,033.56 on September 18, 2023," "$122,793.51 for a portion of the commissions he earned in 2023," and "an additional payment for commissions [Shiflett] earned in 2023," Plaintiffs "unjustifiably stopped paying [him] the commissions he earned pursuant to the parties' agreement in 2024." Id. at ¶¶ 8–10.

---

[2] The parties appear to disagree regarding whether Shiflett was employed in a sales position.

Shiflett alleges that he is entitled to unpaid commissions and "has been harmed by more than $1,000,000 for sales he made on the plaintiff's behalf." Id. at ¶¶ 13–14.

## III. Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from

conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## IV. Discussion

Shiflett has asserted counterclaims for breach of contract, violation of the North Carolina Wage and Hour Act ("NCWHA"), wrongful discharge in violation of public policy, and, in the alternative to his breach of contract claim, claims for quantum meruit and unjust enrichment. Plaintiffs challenge all the counterclaims.

### A. Breach of Contract

To state a claim for breach of contract, a claimant must "plausibly allege 'the existence of a contract between plaintiff and defendant, the specific provisions breached, the facts constituting the breach, and the amount of damages resulting to plaintiff from such breach.'" Johnson v. Cricket Counsel USA, Inc., 658 F.Supp.3d 276, 282 (E.D.N.C. Aug. 24, 2023) (citing RGK. Inc. v. U.S. Fid. & Guar. Co., 292 N.C. 668, 675 (1977); Cantrell v. Woodhill Enters., Inc., 273 N.C. 490, 497 (1968)); see also; Boyd v. Tchrs. Ins. & Annuity Ass'n of Am., 807 F. App'x 254, 255 (4th Cir. 2020) (quoting Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260, 276 (2019)). "Failure to allege the 'specific contract terms which were breached...obviously fall[s] far short of the line of plausibility of entitle[ment] to relief.'" Levy v. Infilaw Corp., No. 3:17-CV-00026-GCM, 2017 WL 3573825, at *3 (W.D.N.C. Aug. 17, 2017) (quoting Page

5

v. Select Portfolio Servicing, Inc., No. 1:12CV900, 2013 WL 4679428, at *3 (M.D.N.C. Aug. 30, 2013), report and recommendation adopted, No. 1:12CV900, 2013 WL 5462282 (M.D.N.C. Sept. 30, 2013)).

Here, Plaintiffs argue that Shiflett has failed to "specifically identify" a written agreement between Shiflett and Plaintiffs regarding the payment of commissions, the material terms of such an agreement, or the specific provision(s) Plaintiffs allegedly breached.[3]

With respect to an agreement between the parties and the material terms of that agreement, Shiflett alleges that he accepted "employment based on the plaintiffs' assurance that he would be paid a salary, commissions, and a share of profits" and that "plaintiffs memorialized the agreements in writing, specifically by emails and spreadsheets." Doc 9 at ¶¶ 1, 7.

Further, with respect to Plaintiffs' alleged breach, Shiflett has alleged that Plaintiffs "stopped paying [him] the commissions he earned pursuant to the parties' agreement in 2024" and that Plaintiffs "breached their agreement by refusing to pay Mr. Shiflett commissions he earned." Id. at ¶¶ 10, 12.

---

[3] Plaintiffs state in their reply that "[f]or clarity, [they] do not contend that Shiflett must attach a written agreement to his pleadings (assuming one exists) to survive the Motion, but he must, at minimum, identify the material terms of same." Doc. 15 at 8.

6

While Shiflett's allegations could be more robust, reading his allegations in the light most favorable to him, the undersigned is not persuaded that Shiflett's breach of contract claim should be dismissed on the current record.

### B. Unjust Enrichment and Quantum Meruit[4]

"To establish unjust enrichment, a party must show '(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously.'" Megaro v. McCollum, 66 F.4th 151, 161 (4th Cir. 2023) (quoting Primerica Life Ins. Co. v. James Massengill & Sons Const. Co., 211 N.C. App. 252, 259–60 (2011)); see also Environmental Landscape Design Specialist v. Shields, 75 N.C.App. 304, 306 (1985) ("To recover in quantum meruit, plaintiff must show: (1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously").

Here, Plaintiffs argue generally that Shiflett has failed to allege the required elements of these claims and, in particular, has failed to allege with

---

[4] "[S]ome courts in North Carolina have comingled the two theories [of unjust enrichment and quantum meruit] …. Other courts have found them to be distinct causes of action." Stephenson v. International Business Machines Corp., No. 17cv1141, 2020 WL 3960955, at *10 (M.D.N.C. July 13, 2020) (collecting cases). Here, the parties address Shiflett's unjust enrichment claim and claim for quantum meruit simultaneously in their briefing. See Doc. 12 at 9 (citing Davis v. Davis Funeral Serv., 2023 NCBC 73, 2023 WL 7029602, at *3 (2023) ("[a]lthough pleaded separately, the claims for quantum meruit and unjust enrichment are two sides of the same coin. Both are claims in 'quasi contract or contract implied in law.'") (citing and quoting Booe v. Shadrick, 322 N.C. 567, 570 (1988)); Doc. 14 at 4-11 ("Quantum meruit is a different side of the same coin.") (citing Booe, 322 N.C. at 570).

the requisite specificity that he performed work for Plaintiffs with a reasonable value of $1,000,000. Relatedly, Plaintiffs contend that Shiflett has "failed to show that he was not paid the 'reasonable value' for the work he did while employed by Plaintiffs" in light of Shiflett's allegations acknowledging that he was previously paid commissions in 2023 and 2024, and his failure to identify "the amount of commissions allegedly outstanding." Doc. 12 at 11.

With respect to the elements of Shiflett's claims, Shiflett has alleged that Plaintiffs hired him "to create and grow a fiber optic cable business using relationships [he] had developed in the field," that during his employment Shiflett "cultivated additional client relationships" and "built the company's fiber optic cable supply business…to a multi-million dollar a year business," and that Plaintiffs agreed to pay Shiflett a salary and commissions in exchange for his work.

With respect to the reasonable value of Shiflett's work, Shiflett's allegations regarding the amount of the commissions he claims are owed are not particularly detailed. However, Shiflett has alleged that while Plaintiffs paid him a portion of the commissions he earned, Plaintiffs "unjustifiably stopped paying [him] the commissions he earned pursuant to the parties' agreement in 2024" and that Shiflett has been "harmed by more than $1,000,000 for the sales he made on the plaintiff's behalf." Doc. 9 at ¶¶ 10, 13.

### C. North Carolina Wage and Hour Act

The NCWHA provides a private cause of action by which employees may recover unpaid wages. See N.C.G.S § 95-25.1, *et seq.*; see also Hamilton v. Memorex Telex Corp., 118 N.C. App. 1, 10 (1995) ("once the employee has earned the wages and benefits under this statutory scheme the employer may not rescind them"). Shiflett asserts a counterclaim pursuant to N.C.G.S. § 95-25.6 of the NCWHA, which provides, in part, that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday."[5]

Only wages that have been allegedly earned and unpaid will support an unpaid wage claim under the NCWHA. See Myers v. Roush Fenway Racing, LLC, No. 1:09CV508, 2009 WL 5215375, at *5 (M.D.N.C. Dec. 28, 2009), report & recommendation adopted in part, rejected in part, 2010 WL 2765378 (M.D.N.C. July 12, 2010).

Here, Plaintiffs argue that Shiflett's NCWHA claim should be dismissed because he has failed to allege with the required specificity that Plaintiffs owe him unpaid commissions.

---

[5] For the purpose of § 95-25.6, wage "includes … commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." N.C.G.S. § 95-25.2(16).

9

However, while (as discussed above) Shiflett's allegations regarding the unpaid commissions could be more detailed, the undersigned is not persuaded that Shiflett's NCWHA claim should be dismissed.

### D. Wrongful Discharge in Violation of Public Policy

"To state a claim for wrongful discharge in violation of public policy, an employee 'has the burden of pleading...that [his] dismissal occurred for a reason that violates public policy.'" Hilderbrand v. Pelham Transp. Corp., No. 1:20CV1020, 2021 WL 2681966, at *5 (M.D.N.C. June 30, 2021), report & recommendation adopted sub nom., 2021 WL 8322630 (M.D.N.C. Sept. 23, 2021) (quoting Wilkes v. Argueta, No. 1:16CV260, 2017 WL 1215749, at *8 (M.D.N.C. Mar. 31, 2017)). Such an employee must "allege 'specific conduct by a defendant that violated a specific expression of North Carolina public policy' in a specific North Carolina statute or a specific provision in the North Carolina Constitution." Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 336 (E.D.N.C. Mar. 27, 2017)) (collecting cases)).

Here, Plaintiffs argue that Shiflett's claim for wrongful discharge should be dismissed because he has failed to allege that Plaintiffs have violated a specific expression of North Carolina public policy.

In response, Shiflett argues that the NCWHA itself sets forth North Carolina's public policy relative to the timely payment of earned wages and

10

that his allegations regarding violations of the NCWHA are also sufficient to support his wrongful discharge claim. See Doc. 14 at 8.

In Amos v. Oakdale Knitting Co., the North Carolina Supreme Court addressed the question of whether an employer had violated public policy by firing employees who refused to work for less than the statutory minimum wage. 331 N.C. 348 (1992).[6] There, the plaintiffs' pay was reduced to a level that was below the statutory minimum wage, and they were told that they either had to work for the reduced pay or would be fired. They refused to work for the reduced pay and were terminated. In considering whether that scenario supported a claim for wrongful discharge in violation of public policy, the Amos court explained that "at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes" and stated that, "without question, the payment of minimum wage is the public policy of North Carolina." Id. at 353 (quoting Amos, 102 N.C.App. 782, 785 (1991)). The court explained that the applicable version of the NCWHA stated that:

> (b) The public policy of this State is declared as follows: The wage levels of employees, hours of labor, payment of earned wages, and the well-being of minors are subjects of concern requiring legislation to promote the general welfare of the people of the State without jeopardizing the competitive position of North Carolina business and industry. The General

---

[6] In briefing the instant Motion to Dismiss, neither party referenced Amos.

11

> Assembly declares that the general welfare of the
> State requires the enactment of this law under the
> police power of the State.
>
> Id. at 353 (quoting N.C.G.S. § 95–25.1(b) (1989)).

This same statement of North Carolina public policy continues to appear in the NCWHA. N.C.G.S. § 95–25.1(b) (2023).

Shiflett has not alleged, like the plaintiffs in Amos, that his employment was terminated because he refused to accept less than the statutorily required minimum hourly wage.

Rather, his claim is related to Plaintiffs' alleged failure to pay Shiflett commissions that he had earned. Specifically, Shiflett has alleged that "[a]fter [he] complained about not receiving commissions to which he was entitled, the plaintiffs terminated his employment" and that he was terminated "as a direct result of his demand that the plaintiffs pay him the commissions he had earned and to which he was entitled." Doc. 9 at ¶¶ 42, 43.

As noted above, the NCWHA defines "wages" to include "commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." N.C.G.S. § 95-25.2(16).

While (as also discussed above) Shiflett's allegations regarding the unpaid commissions could be more detailed, in light of allegations he has made and the undersigned's conclusion that Shiflett's NCWHA claim should not be dismissed at this stage, the undersigned is similarly persuaded that Shiftlett's

claim for wrongful discharge in violation of public policy should be allowed to proceed.

## V. Recommendation

For the reasons set out herein, the undersigned **RESPECTFULLY RECOMMENDS** that Plaintiffs' Motion to Dismiss Defendant Shiflett's Counterclaims (Doc. 11) be **DENIED**.

Signed: September 3, 2025

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).